OPINION
{¶ 1} Appellant, Jose Hernandez-Rodriguez, appeals from the judgment of the Portage County Municipal Court, overruling his motion to suppress evidence. For the reasons discussed herein, we affirm.
 {¶ 2} At approximately 2:30 a.m. on February 21, 2006, appellant was stopped by Trooper Thomas Hermann for driving 84 m.p.h. in a 45 m.p.h. zone. The trooper approached appellant's vehicle from the driver's side and asked appellant for his driver's license and insurance information. Although Trooper Hermann observed nothing unusual about appellant's speech or mannerisms, he did notice what he *Page 2 
characterized as a "strong odor of alcoholic beverage" about appellant's person. The trooper asked appellant to exit his vehicle and enter the front seat of his cruiser. Once in the cruiser, the trooper asked appellant why he was going so fast; appellant responded he had not noticed his excessive speed. Trooper Hermann then asked appellant how much he had to drink that night. Appellant informed the trooper he had "a couple drinks." The trooper asked appellant what he meant by "a couple," to which appellant replied "two."
 {¶ 3} Trooper Hermann proceeded to administer three field sobriety tests: The horizontal gaze nystagmus ("HGN") test, the one-leg stand test, and the walk-and-turn tests. The trooper determined appellant failed each test and placed appellant under arrest for driving under the influence of alcohol. Appellant was charged with operating a vehicle while intoxicated ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d) as well as speeding in violation of R.C. 4511.21(C). Appellant entered pleas of not guilty to all counts.
 {¶ 4} On October 26, 2006, a suppression hearing was held after which the trial court overruled appellant's motion to suppress. On December 5, 2006, appellant withdrew his former not guilty pleas and entered a plea of no contest to one count of R.C. 4511.19(A)(1)(d). In light of the plea, the state dismissed the remaining charges. Appellant filed a timely notice of appeal and now assigns three errors for our consideration.
 {¶ 5} Appellant's three assignments of error challenge the trial court's denial of his motion to suppress. Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. During a hearing on a motion to suppress evidence, the *Page 3 
trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. State v. Djisheff, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, at ¶ 19.
 {¶ 6} Appellant's first assignment of error asserts:
 {¶ 7} "The trial court erred in not granting Mr. Hernandez-Rodriguez's motion to suppress the evidence obtained from the unlawful detention of Mr. Hernandez-Rodriguez to perform field sobriety tests."
 {¶ 8} Under his first assignment of error, appellant asserts the trial court erred when it overruled his motion to suppress all evidence resulting from the field sobriety tests to the extent the arresting officer lacked the necessary reasonable suspicion to request appellant to perform the tests. We disagree.
 {¶ 9} An officer who has stopped a vehicle for a minor traffic offense may proceed to investigate the detainee for driving under the influence "if he or she has a reasonable suspicion that the detainee may be intoxicated based upon specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." State v.Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-156, 1996 Ohio App. LEXIS 3361. Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." State v. Shepherd (1997),122 Ohio App.3d 358, 364. *Page 4 
 {¶ 10} Under the circumstances, the trooper stopped appellant for traveling 84 m.p.h. in a 45 m.p.h. zone. After the stop, the officer approached appellant's driver's side window and testified he noticed a strong odor of alcoholic beverage. After asking appellant to exit his car, appellant admitted to consuming "a couple drinks." Aside from the odor, however, the trooper testified appellant displayed no other indicators of intoxication.
 {¶ 11} Appellant argues the foregoing does not provide sufficient basis for conducting the field sobriety tests. In support, appellant cites the Second Appellate District's holdings in State v. Spillers
(Mar. 24, 2000), 2d Dist. No. 1504, 2000 Ohio App. LEXIS 1151 andState v. Dixon (Dec. 1, 2000), 2d Dist. No. 2000-CA-30, 2000 Ohio App. LEXIS 5661. In those cases, the Second District determined that the slight odor of an alcoholic beverage and the admission to having consumed "a couple" of beers were insufficient to justify the administration of field sobriety tests.
 {¶ 12} The instant matter is distinguishable from Spillers andDixon. In Spillers and Dixon, the Second District's holding hinged upon the fact that the arresting officers noticed only a slight odor. Because drinking and driving is not entirely illegal in Ohio, one could have consumed "a couple" beers, emit a slight odor of alcoholic beverage, and still remain unimpaired in the eyes of the law. The courts inSpillers and Dixon therefore determined the arresting officers could not detain their respective defendants to conduct field sobriety tests without unreasonably intruding upon their liberty. SeeSpillers, at *8-*9; see, also, Dixon, at *6.
 {¶ 13} In the matter sub judice, Trooper Herman testified that appellant projected a strong odor of alcoholic beverage with an admission of "a couple" drinks. Courts, including the Second Appellate District, have held that the "strong odor" of alcohol, by *Page 5 
itself, can trigger reasonable suspicion of driving under the influence such as to warrant field sobriety testing. See State v. Marshall, 2d Dist. No. 2001-CA-35, 2001-Ohio-7081, 2001 Ohio App. LEXIS 5934, *5-*6; see, also, State v. Haucke (Mar. 17, 2000), 2d Dist. No. 99 CA 77, 2000 Ohio App. LEXIS 1049; State v. Turner (Jan. 11, 1993), 4th Dist. No. 812, 1993 Ohio App. LEXIS 40. Here, the officer not only identified a strong odor, but appellant admitted to consuming alcohol prior to the stop. In State v. Walker, 149 Ohio App.3d 296, 2002-Ohio-4362, this court stated, in dicta, that a detainee's admission to having "a few beers" is sufficient unto itself to establish the requisite reasonable suspicion to initiate field sobriety testing. Id. at ¶ 3. In our view, the trooper's testimony regarding the strong odor and appellant's admission to consuming a couple drinks provide sufficient indicia of intoxication justifying the tests.
 {¶ 14} Appellant's first assignment of error lacks merit.
 {¶ 15} Appellant's second assignment of error alleges:
 {¶ 16} "The trial court erred in not granting the [sic] Mr. Hernandez-Rodriguez's motion to suppress the evidence obtained from the illegal arrest of Mr. Hernandez-Rodriguez as there was no probable cause for said arrest."
 {¶ 17} Under his second assignment of error, appellant challenges the admission of the results of the three field sobriety tests given by Trooper Herman. Appellant argues the trooper failed to substantially comply with the standards set forth by the National Highway Traffic Safety Administration ("NHTSA"). In appellant's view, the results of the field sobriety tests were fatally unreliable and could not be used as a foundation to formulate probable cause to arrest.
 {¶ 18} In Ohio, a warrantless arrest for operating a motor vehicle while intoxicated is constitutional where the officer, at the moment of arrest, has probable *Page 6 
cause to make the arrest. State v. Woodards (1966), 6 Ohio St.2d 14. To the extent the state seeks to use the results of field sobriety tests as evidence of probable cause, the arresting officer must have administered the tests in substantial compliance with standardized testing procedures. R.C. 4511.19.
 {¶ 19} At the hearing, Trooper Hermann testified he administered three field sobriety tests: The HGN test, the "one-leg-stand" test, and the "walk and turn" test. The trooper detailed the manner in which he administered the tests. Further, a copy of the videotape which recorded the administration of the tests was admitted into evidence at the hearing. A copy of the NHTSA manual pertaining to field sobriety testing was also admitted into evidence for purposes of comparing the trooper's administration of the tests to the standards set forth in the manual.
 {¶ 20} We shall first address the trooper's administration of the HGN test. At the hearing, the trooper testified he requested appellant to sit in his cruiser in order to administer the HGN test.[1] There are three discrete components to the HGN test: (1) the lack of smooth pursuit of the eyes, (2) the distinct nystagmus at maximum deviation, and (3) the onset of nystagmus prior to 45 degrees. The manual provides that an officer clearly instruct the subject regarding the procedures for the test. The manual also requires the officer to instruct the suspect to remove any glasses or contact lenses. See Djisheff, supra, at ¶ 25.
 {¶ 21} Here, the trooper began his test by repeatedly instructing appellant to "keep his head still." However, the evidence does not reveal any additional instructions were given. According to the manual, an officer is required to give a suspect the *Page 7 
following instructions: (1) "I am going to check your eyes;" (2) "Keep your head still and follow this stimulus with your eyes only;" and (3) "Keep following the stimulus with your eyes until I tell you to stop." When the evidence is compared with the manual, it appears the officer provided appellant with only a partial instruction. Similarly, although appellant was not wearing glasses, Trooper Hermann did not inquire into whether appellant wore contacts and, if so, to remove them.
 {¶ 22} Next, the manual underscores the import of estimating a 45-degree angle for purposes of properly complying with the testing procedures; here, Trooper Hermann testified that once appellant was in his cruiser, he had him square his shoulders such that appellant was facing him. On direct examination, the trooper testified 45-degrees from this center would be appellant's shoulders. In actuality, were appellant facing the trooper squarely, appellant's shoulders would represent a 90-degree angle from his center.
 {¶ 23} With respect to the "smooth pursuit" component, the trooper testified he moved a stimulus from the center of appellant's face and went to the right for four seconds, came back to the center, and repeated the procedure to the left. The manual requires a two second movement on either side. With respect to the "onset of nystagmus prior to 45 degrees" component, the trooper testified he did not detect the onset of nystagmus prior to 45-degrees, but still concluded appellant failed this component. It appears from the record that the trooper merely redid the maximum deviation test, earmarked it as the onset of nystagmus prior to 45-degrees. Notwithstanding this facial error, the trooper nevertheless concluded his methodology *Page 8 
"reasonably complied" with the NHTSA standards.[2] Finally, the NHTSA manual requires an officer to repeat each component of the test. Here, the trooper did not specifically testify he did so.
 {¶ 24} Although there was a video tape taken of the stop and arrest, the camera was situated upon the dashboard of the cruiser. Because the HGN test was administered inside the cruiser, we have no way of viewing the actual administration of the test. Based upon the trooper's testimony and the audio from the videotape, however, we believe the foregoing points demonstrate the HGN test was not in substantial compliance with the NHTSA standards. Therefore, any evidence resulting from the test should have been suppressed. See Djisheff, supra (holding arresting officer failed to substantially comply where no evidence was submitted on trooper's training to give HGN in vehicle, the tests were not repeated, and the trooper failed to provide specific instructions).
 {¶ 25} Next, we shall address the trooper's administration of the one-leg stand test. This test requires the officer to inform the suspect that he must begin the test with his feet together and that he must keep his arms at his side for the entire test. The officer must additionally instruct the suspect that he must raise one leg, either leg, six inches from the ground and maintain the position while counting aloud for thirty seconds. Under the circumstances, we do not believe the trooper's administration of this test meaningfully deviated from the standards in the NHTSA manual. Thus, we hold Trooper Herman administered the test in substantial compliance with the manual. *Page 9 
 {¶ 26} Finally, Trooper Herman conducted the walk-and-turn test. This test requires the officer to first instruct the suspect of the initial positioning, i.e., the suspect must stand with his arms down and place one foot directly in front of the other and walk in a straight line. The suspect is then advised to remain in the position while further instructions are given. During this time, the officer must describe and demonstrate how to perform the test. The instructions include the method by which the suspect walks while touching his heel to his toe for every step for nine steps, watching his feet at all times. Each step is counted aloud while walking the line and, at the end, the suspect must make a turn with small steps with one foot while keeping the other foot on the line.
 {¶ 27} Here, the trooper did not verbally describe the manner in which appellant was to perform the test, i.e., he did not instruct appellant to stand in the heel to toe position until told to begin and did not instruct appellant to watch his feet at all times. These deficiencies notwithstanding, the trooper physically demonstrated the proper method of executing the test. As such, the evidence indicates that the trooper substantially complied with the requirements set forth in the manual. Under the circumstances, we hold both the results of Trooper Herman's administration of the one-leg stand test and the walk and turn test were admissible.
 {¶ 28} At the hearing, Trooper Herman pointed out that appellant spoke clearly, walked steadily, and his eyes were neither bloodshot nor glassy. However, appellant was characterized as possessing the strong odor of alcoholic beverage about his person and he admitted to consuming "a couple" of drinks; further, even excluding the results of the HGN test, a review of the arrest video shows appellant failed the walk-and-turn test by virtue of his failure to follow the trooper's instructions. The video further demonstrates appellant failed the one-leg stand test owing to a basic physical *Page 10 
unsteadiness. Given the totality of the evidence, we believe, at the moment of arrest, the trooper had sufficient information to cause him to believe appellant was driving under the influence. We therefore hold Trooper Herman had probable cause to arrest appellant.
 {¶ 29} Appellant's final assignment of error alleges:
 {¶ 30} "The trial court erred in denying Mr. Hernandez-Rodriguez's motion to suppress the evidence obtained from the BAC test as the state of Ohio failed to demonstrate that the arresting agency and arresting trooper complied with the regulations for the administration of this test set forth in the OAC."
 {¶ 31} Once a defendant specifically raises the issue of the reliability of a BAC test, the state must prove substantial compliance with the Ohio Department of Health Regulations. Defiance v. Kretz
(1991), 60 Ohio St.3d 1, 3. "Once the state demonstrates substantial compliance, the burden shifts to the defendant to show he was prejudiced by the state's failure to strictly comply with the regulations."State v. Perreault, 11th Dist. No. 2001-P-0061, 2002-Ohio-7449, at ¶ 13.
 {¶ 32} The Supreme Court of Ohio has elaborated on the substantial compliance standard as it relates to alleged failures to comply with Department of Health Regulations. In Bumside, the Supreme Court observed that the substantial compliance standard is limited to excusing only deviations from the regulations that are "clearly de minimis," i.e., irregularities amounting to "minimal procedural deviations." Id. at ¶ 34. Limiting the standard to excusing only errors that are clearly de minimis prevents the judiciary from usurping the Director of Health's authority to promulgate regulations that ensure the reliability of alcohol-test results. Id. *Page 11 
 {¶ 33} Appellant raises several arguments under his third assignment of error. We shall first address appellant's assertion that the state failed to put forth specific evidence of the type of radio frequency used to perform the radio frequency interference ("RFI") test. O.A.C. 3701-53-04(A)(1) provides:
 {¶ 34} "(A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
 {¶ 35} "(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath-testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 36} The Code requires a senior operator to perform an RFI check using a hand-held radio normally used by the law enforcement agency. At the suppression hearing, the state offered two exhibits evidencing the pre-and post-breath test instrument checks. The checklists were properly certified copies of the test results conducted by the senior operator. The forms also reference O.A.C. 3701-53-04. The exhibits set forth a series of instrument checks, one of which states: "When instrument displays `please blow', transmit using hand-held radio near instrument without touching it, until RFI detector aborts the test." On both forms, the box next to the foregoing instruction was checked. *Page 12 
 {¶ 37} Appellant points out that the checklist instructs the senior operator performing RFI checks to "transmit using a hand-held radio," but does not state whether the radio used is one "normally used by the law enforcement agency." Accordingly, appellant asserts the state failed to establish substantial compliance with the OAC Regulations. In support, appellant cites Village of Granville v. Pumphrey, 5th Dist. No. 2006CA00054, 2007-Ohio-251.
 {¶ 38} In Pumphrey, the Fifth Appellate District affirmed the trial court's suppression of evidence derived from a BAC test due to the state's failure to establish substantial compliance with the OAC regulations governing RFI interference checks. In that case, the trial court ruled that the testimony of the senior operator who performed the instrument check was necessary to establish that the RFI check was performed using a hand-held radio normally used by the law enforcement agency. On appeal, the court held:
 {¶ 39} "The OAC Regulation specifically requires the instrument to be checked to detect RFI using a hand-held radio `normally used by the law enforcement agency'. In the absence of evidence demonstrating this specific requirement of the regulation has been met, we find the trial court did not err in finding appellant had not substantially complied with same." Id at ¶ 25. (Emphasis sic.)
 {¶ 40} In the instant matter, Trooper Hermann was not the senior operator who conducted the test at issue. Moreover, the trooper testified he had not personally witnessed the senior operator conduct the RFI test. Thus, in light of Pumphery, appellant concludes that the state failed to put forth adequate evidence of substantial compliance with the OAC Regulations governing RFI testing procedure. *Page 13 
 {¶ 41} The Fifth District's holding in Pumphery is predicated upon a concern with the speculative nature of an officer attesting to the validity of the procedures used during the calibration of a BAC machine when that officer does not have first-hand knowledge of the specific procedures employed in that case. At issue, therefore, is the reliability of the results where the arresting officer cannot testify to having personal knowledge that each of the OAC Regulations were properly followed. We agree that the reliability of BAC test results is of paramount concern; however, we differ with the Fifth District regarding how the reliability of the test procedures can be established.
 {¶ 42} In State v. Reed, 3d Dist. No. 15-03-08, 2004-Ohio-393, the Third Appellate District determined that the instrument checklists, created by a senior operating officer while performing the various checks required by the OAC, provide competent, credible evidence that the instrument checks and RFI check were completed in compliance with the OAC Regulations. Id. at ¶ 22; c.f. State v. Schmehl, 3d Dist. No. 2-05-33, 2006-Ohio-1143. We agree with and therefore adopt the Third District's conclusion on this issue. The instrument checklists are certified records compiled according to administrative rules and regulations and therefore are inherently trustworthy and reliable.
 {¶ 43} We recognize the checklists do not parrot the specific language of the regulation addressing the procedures for testing the RFI; however, the checklists do reference OAC 3701-53-04, the Code section setting forth the standards governing the test procedures. From this, one can infer that all of the checkpoints on the list must be read in the context of OAC 3701-53-04. As such, any box checked on the checklist was done so in light of the OAC Regulation governing the procedure. We therefore hold that a valid, certified instrument checklist provides competent, credible evidence that the *Page 14 
senior operating officer who conducted the test properly administered the RFI test pursuant to the OAC. Such is sufficient to establish substantial compliance with the OAC Regulations. Accordingly, appellant's argument regarding the RFI test is not well-taken.
 {¶ 44} Appellant next argues that the state failed to put forth sufficient evidence that the solution used to calibrate the testing instrumentation was kept under refrigeration while it was not being used. OAC 3701-53-04(C) states:
 {¶ 45} "(C) An instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first. After first use, instrument check solutions shall be kept under refrigeration when not being used. The instrument check solution container shall be retained for reference until the instrument check solution is discarded."
 {¶ 46} At the hearing, the trooper testified the solution at issue was first used on January 23, 2006. He further testified that the standard practice of his law enforcement agency is to keep the calibration solution in a refrigerator. Although a box is checked by the instruction "with the simulator at 34 degrees ± .2 degrees celcius", the arresting officer had no personal knowledge of the maintenance of the specific solution used.
 {¶ 47} Like our analysis of the RFI test issue, we believe the admission of the BAC machine's instrument checklist adequately demonstrates that the solution used by the senior operating officer was refrigerated pursuant to the OAC Regulation. Thus, appellant's argument lacks merit.
 {¶ 48} We shall now address appellant's arguments challenging the state's alleged failure to demonstrate substantial compliance in keeping specific documents *Page 15 
and records required by the OAC. First, appellant asserts the trial court erred in denying his motion to suppress on the basis that the state was obligated, but failed to introduce evidence of the results of all tests taken with the breathalyzer over the last three years as required by OAC 3701-53-01(A).
 {¶ 49} In State v. Neuhoff (1997), 119 Ohio App.3d 501, the Fifth Appellate District stated: "In order to support a motion to suppress, with particular facts that would put the state on notice of the areas to be challenged, a defendant must first complete due and diligent discovery, on all issues which he or she intends to challenge, in the motion to suppress." Id. at 506. (Sic.)
 {¶ 50} Further, in State v. Embry, 12th Dist. No. CA2003-11-110,2004-Ohio-6324, the Twelfth Appellate District held:
 {¶ 51} "[I]n order to require the state to respond specifically and particularly to issues raised in a motion, an accused must raise the issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight." Id. at ¶ 29. (Emphasis added). See, also, City of Norwood v.Kahn, 1st Dist. Nos. C-060497, C-060498, and C-060499, 2007-Ohio-2799, at ¶ 8-9 (adopting the holding in Embry).
 {¶ 52} Here, appellant moved to suppress evidence from the BAC Datamaster test results due to the state's failure to substantially comply with the Code's requirement that it retain records of maintenance and repairs "for not less than three years" pursuant to OAC 3701-53-01(A). The record reveals appellant failed to seek discovery of the *Page 16 
maintenance repair records. Defense counsel, on cross-examination, asked the trooper whether he had reviewed maintenance and repair records for the machine that was used to administer appellant's test. The trooper responded he had not; however, he testified that these records are kept at the post to which he reports.
 {¶ 53} We agree with the Fifth, Twelfth, and First Appellate Districts' emphasis upon discovery pertaining to the state's compliance with OAC Regulations. We therefore hold the trooper's general testimony that the law enforcement agency complied with the requirements of OAC 3701-53-01(A) was sufficient to overcome appellant's motion to suppress on this issue. Appellant's failure to attempt to discover factual support for his motion to suppress relating to the state's compliance with OAC 3701-53-01(A) relieved the state of any burden to respond to appellant's allegations with greater specificity. As it relates to OAC 3701-53-01(A), appellant's argument is overruled.
 {¶ 54} Next, appellant asserts the trial court erred in denying his motion to suppress because the state failed to demonstrate that the testing agency had at least one copy of a written procedure manual and operations manual for the BAC used to test appellant as required by OAC 3701-53-01(B).
 {¶ 55} OAC 3701-53-01(B) requires a law enforcement agency to keep two manuals: (1) a written procedure manual for performing the substance tests to be kept in the area where the analytical tests are performed and (2) an operational manual provided by the instrument's manufacturer to be kept where the breath tests are performed. The language used in the regulation pertaining to where the manuals are to be kept is mandatory. State v. Douglas, 1st Dist. No. C-030897, 2004-Ohio-5726, at ¶ 6. *Page 17 
 {¶ 56} In his motion to suppress, appellant alleged "the testing agency did not have at least one copy of the written procedure manual, or an operational manual provided by the manufacturer * * *" required by OAC 3701-53-01 (B). Moreover, prior to the suppression hearing, defense counsel subpoenaed the "Basic Operator's Manual for the BAC Datamaster" to determine whether his law enforcement agency was in substantial compliance with OAC 3701-53-01(B). Notwithstanding the subpoena, the trooper failed to produce the operator's manual at the hearing. After being informed of this omission, defense counsel queried whether Trooper Hermann knew if the law enforcement agency to which he reports keeps the manuals at issue. In response, the trooper conceded: "I don't know if it's there or not. But I'm sure if we're required to have it, it's going to be there."
 {¶ 57} The state was required to comply with defense counsel's particularized request for production of the manual in question. It failed to do so. Further, the trooper conceded he did not know if his law enforcement agency was in compliance with the OAC mandate. We therefore hold the state failed to show it was in substantial compliance with OAC 3701-53-01(B). See Douglas, supra, at ¶ 6-7.
 {¶ 58} While it is unclear how appellant was prejudiced by the state's failure to provide specific evidence of the location (or even existence) of the necessary manuals, the Supreme Court has held that such a demonstration is unnecessary at this point of the analysis. InBurnside, the Court determined that an inquiry into prejudice is relevant only after the state demonstrates substantial compliance. Id. at ¶ 36. We find no authority indicating this noncompliance was a "minor procedural deviation" and thus hold the state failed to substantially comply with this regulation. Douglas, supra, at ¶ 7. *Page 18 
 {¶ 59} Due to the state's failure to demonstrate substantial compliance with OAC 3701-53-01(B), the BAC test results should have been suppressed. Appellant's third assignment of error is sustained.
 {¶ 60} For the reasons discussed herein, appellant's first and second assignments of error are overruled; however, to the extent the state failed to meet its burden regarding OAC 3701-53-01 (B), appellant's third assignment of error is sustained. As a result, the judgment entry of the Portage County Municipal Court, Ravenna Division is affirmed in part, reversed in part, and remanded.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] Although the manual does not specifically authorize this practice, "the admissibility of the results of the HGN test are dependent on how the officer is trained to administer them and whether the officer'sactions complied with his training." State v. Dohner, 11th Dist. No. 2003-P-0059, 2004-Ohio-7242, at ¶ 13. Trooper Herman testified he was trained by Lt. Morris Hill to give the HGN test in the cruiser.
[2] To establish some indicia of intoxication pertaining to this component of the test, nystagmus must be detectable prior to 45-degrees because, according to the manual, "[p]eople exhibit slight jerking of the eye at maximum deviation, even when unimpaired." *Page 1