OPINION
{¶ 1} Defendant-appellant, William J. Price, appeals the judgment of the Geauga County Court of Common Pleas, sentencing him to a total term of imprisonment of nine years, following his no contest pleas to one count of Aggravated Vehicular Homicide, a felony of the second degree in violation of R.C. 2903.06(A)(2)(a); one count of Aggravated Vehicular Assault, a felony of the third degree in violation of R.C.2903.08(A)(1)(a); and one count of Operating a Vehicle Under the Influence of *Page 2 
Alcohol, a misdemeanor of the first degree, in violation of R.C.4511.19(A)(1)(a) and (f). We affirm the judgment of the court below.
 {¶ 2} At 2:47 p.m., on August 13, 2006, Price was involved in an automobile accident in which the SUV he was driving struck a motorcycle driven by Raymond Long. Long was killed instantly; his girlfriend, Patricia Morgan, suffered extensive and permanent injuries; Price himself was also severely injured.
 {¶ 3} Trooper James Smith of the Ohio State Highway Patrol, who was working the 3:00 to 11:00 p.m. shift that day, was en route from his home to the Chardon Patrol Post when he was dispatched to the accident scene. Upon arrival, Smith was met by Sergeant Biskup of the State Highway Patrol, who had also been called to the scene. Trooper Smith observed Price sitting on a guardrail where emergency personnel were attending to his injuries. While questioning Price prior to his transport to Geauga Hospital, Trooper Smith began to suspect that Price might be intoxicated, due to his unresponsiveness, his glassy, bloodshot eyes, and slurred speech. During the course of the accident investigation, it was discovered that Price had three bottles of vodka in his vehicle. Based upon these findings, Trooper Smith and Sergeant Biskup determined that Price should be tested for intoxication.
 {¶ 4} Trooper Smith followed the rescue vehicle carrying Price to Geauga Hospital, stopping at his patrol post briefly to pick up two blood sampling kits, since his patrol vehicle was only carrying one at the time and State Highway Patrol regulations required each vehicle to be equipped with two kits per shift. Smith arrived at the hospital at approximately 3:29 p.m., at which time he informed Price he was under arrest, and read Price his rights, as outlined in Ohio BMV form 2255, which was *Page 3 
required procedure prior to requesting a blood specimen. After having acknowledged his rights, Price consented to having blood drawn. At approximately 3:35 p.m., Nurse Roberta Hammonds drew a sample of Price's blood using the State Highway Patrol's standard specimen kit.
 {¶ 5} Trooper Smith subsequently took custody of the sample and returned to the accident scene to investigate further. During this time, the sample remained in his patrol vehicle. According to Smith's testimony, the sample remained in his custody until he was finally able to mail it to the Ohio State Patrol Crime Lab at approximately 10:00 p.m., on August 13, 2006. In contrast, the property control form filled out and mailed by Smith along with Price's blood sample indicated that the time of the mailing, which is presumed to be when a transfer in the chain of custody occurs, was listed as 3:50 p.m., on that date. The specimen arrived at the crime lab on August 21, 2006, eight days later. Criminalist Jeffrey Turnau tested the sample on that date, and determined that Price's blood alcohol level was .244.
 {¶ 6} On September 22, 2006, the Geauga County Grand Jury returned a six count indictment against Price charging him as follows: Count One, Aggravated Vehicular Homicide, a second degree felony in violation of R.C. 2903.06(A)(1)(a); Count Two, Aggravated Vehicular Assault, a third degree felony in violation of R.C. 2903.08(A)(1)(a); Count Three, Involuntary Manslaughter, a third degree felony in violation of R.C.2903.04(B); Counts Four and Five, Operating a Vehicle Under the Influence of Alcohol, first degree misdemeanors, in violation of R.C.4511.19(A)(1)(a) and (f); and Count Six, Failure to Operate a Motor Vehicle in a Lane of Travel, a minor misdemeanor in violation of R.C.4511.25(A). *Page 4 
 {¶ 7} On September 25, 2006, Price waived his right to a separate arraignment and entered a plea of "not guilty" to the charges.
 {¶ 8} On November 21, 2006, Price filed a Motion to Suppress the results of his blood alcohol test. The state opposed, and, on January 24, 2007, a hearing was held on Price's motion. On January 31, the trial court filed a judgment entry denying Price's Motion to Suppress.
 {¶ 9} On February 20, 2007, Price entered into a written plea agreement with the state, in which he agreed to enter pleas of "no contest" to Counts One, Two, and Four of the indictment.
 {¶ 10} On April 16, 2007, the trial court held a sentencing hearing, in which it sentenced Price to six years imprisonment for Aggravated Vehicular Homicide and three years imprisonment for Aggravated Vehicular Assault, to be served consecutively. The trial court further ordered Price to serve one hundred days imprisonment for OVI, to be served concurrently with the other sentences. Additionally, the trial court ordered Price to pay restitution in the amount of $9, 000; imposed fines totaling $23, 500; and ordered Price to pay court costs.
 {¶ 11} It is from this judgment that Price timely appeals, assigning the following as error for our review:
 {¶ 12} "[1.] The trial court erred in overruling appellant's Motion to Suppress the results of appellant's blood alcohol test where the evidence failed to establish substantial compliance with the rules established by the Ohio Department of Health. *Page 5 
 {¶ 13} "[2.] The trial court erred in imposing consecutive sentences and imposed a sentence that is contrary to the consistency and proportionality guidelines of R.C. 2929.11(B).
 {¶ 14} "[3.] The trial court erred in sentencing appellant to a harsher sentence for exercising his Fifth Amendment right against self[-]incrimination.
 {¶ 15} "[4.] The trial court erred to the prejudice of the defendant-appellant when it ordered fines and costs without consideration of his ability to pay financial sanctions."
 {¶ 16} In his first assignment of error, Price asserts that the trial court erred in failing to suppress the admission of his blood test evidence, since the state failed to make a showing that it substantially complied with various rules promulgated by the Director of Health with regard to the testing of blood for alcohol content.
 {¶ 17} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses. State v. Hill, 75 Ohio St.3d 195, 208,1996-Ohio-222. Since the trial court is in the best position to resolve the factual issues, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. Id.
 {¶ 18} In any prosecution premised upon a violation of R.C. 4511.19, the result of a blood alcohol test is presumed valid unless the defendant first challenges the validity *Page 6 
"by way of a pretrial motion to suppress." Burnside, 2003-Ohio-5372, at ¶ 24. Failure to file such a motion "waives the requirement on the state to lay a foundation for the admissibility of the test results." Id., quoting State v. French, 72 Ohio St.3d 446, 451, 1995-Ohio-32. However, if the defendant challenges the validity of the test results by means of a pretrial suppression motion, the burden shifts to the state "to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health." Id. If the state satisfies this burden and creates a presumption of admissibility, "the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance." Id., citing State v. Brown (1996), 109 Ohio App.3d 629,632.
 {¶ 19} Price first asserts that the results of his blood tests were not admissible and should have been suppressed, since the state failed to prove it complied with Ohio Adm. Code 3701-53-01 (B), and3701-53-06(C) and (D), when his blood sample was tested. These rules require that a written procedural manual containing the analytical techniques used in testing for the presence of alcohol or drugs in bodily substances be kept on file in the area where such tests are performed, and that the manual be maintained and updated in a specified fashion. Price specifically argues that the state failed to prove that (1) the test manual was on file in the lab where the test was performed, and (2) that the onsite manual applied to a different model of gas chromatograph than that which was used to test his blood sample.
 {¶ 20} At the hearing on Price's motion to suppress, Criminalist Jeff Turnau testified on behalf of the state. Turnau testified that he performed the test on Price's blood sample using a Perkin-Elmer Model 8500 gas chromatograph. Despite Price's *Page 7 
assertion that the onsite manual did not comply because it referenced the Perkin-Elmer Model 8410 gas chromatograph, Turnau testified the same manual is used for all Perkin-Elmer 8000 series machines, and is kept on a shelf near the bench where he performs the blood tests. Based upon this testimony, the state provided sufficient evidence of substantial compliance with ODH regulations. Price's first argument lacks merit.
 {¶ 21} Price next challenges whether the state complied with the provisions of Ohio Adm. Code 3701-53-01(A) and 3701-53-04(E), which require the results of instrument checks, calibration checks, and maintenance of the equipment used for the testing of blood samples be kept for a period of not less than three years. We reject this argument.
 {¶ 22} At the hearing, Turnau was able to testify about instrument and calibration checks and records associated with each, he was unable to testify from personal knowledge with regard to maintenance records. "The failure of the state to adduce any evidence as to compliance with the recordkeeping requirement" as mandated by the Director of Health, may be grounds for granting a motion to suppress. State v. Lipsky, 1st Dist. No. C-010473, 2002-Ohio-1141, 2002 Ohio App. LEXIS 1159, at *5. However, it is well-settled that "[a] motion to suppress must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." State v.Nicholson, 12th Dist. No. CA2003-10-106, 2004-Ohio-6666, at ¶ 9, citingState v. Shindler, 70 Ohio St.3d 54, 58, 1994-Ohio-452; accord State v.Barnett, 11th Dist. No. 2006-P-0017, 2007-Ohio-4954, at ¶ 28 ("[A]n accused's failure to provide any specificity in his motion to suppress relieve[s] the state of the duty to specifically *Page 8 
address the litany of regulatory violations" asserted in the motion.);State v. Embry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, at ¶ 24
("If a criminal defendant wishes to increase the burden on the prosecution to something beyond merely responding in general, the issues raised must have some specific factual basis to support them.").
 {¶ 23} In the instant case, a review of Price's motion to suppress reveals that he not only failed to raise the issue of a failure to comply with Ohio Adm. Code 3701-53-01(A) and 3701-53-04(E) with any degree of specificity; he failed to raise this issue at all .[1]
Price's argument that the state failed to demonstrate substantial compliance with these particular Administrative Code regulations is, therefore, without merit.
 {¶ 24} Price next challenges whether the state substantially complied with Ohio Adm. Code 3701-53-05, which requires all blood and urine samples to be refrigerated "[w]hile not in transit or under examination." Ohio Adm. Code 3701-53-05(F). With regard to this section, Price points to Trooper Smith's testimony, in which he admitted to not mailing the sample until after 10:00 p.m. on August 13, 2006, over six hours after the time indicated on the property control form and to the fact that it took his specimen approximately eight days from the time it was mailed to arrive at the crime lab. Price also challenges whether the state substantially complied with Ohio Admin. Code 3701-53-05(C), which requires the sample vial used to collect blood samples contain "solid *Page 9 
anticoagulant," or whether the vial contained a preservative to prevent degeneration of blood specimens while unrefrigerated.
 {¶ 25} With regard to the question of whether an anticoagulant or chemical preservative was present in the vacuum tube containing Price's blood sample, the state elicited testimony from Turnau, who stated that the tube containing Price's sample had a grey cap, which indicates the tube in question contained both potassium oxalate, an anticoagulant, and sodium fluoride, a preservative. Both Douglas Rohde, Senior Forensic Chemist for the Lake County Crime Lab, who testified on behalf of the state, and Robert Williams, Price's own expert, corroborated Turnau's testimony in this regard. Williams further testified that it would not be routine for a laboratory to test for the presence of these substances if the top of the vial in question was grey. Consequently, Price's argument that the state did not substantially comply with these requirements must fail.
 {¶ 26} With regard to the second issue of non-refrigeration, we note that while non-refrigeration for the six hour period of time between when the sample was taken from Price and the time it was actually mailed does raise some concerns, the Fifth Appellate District has noted, "the issue is the reliability of the test results not the performance requirements of the Ohio Administrative Code." State v. Brush, 5th Dist. No. 04CA92, 2005-Ohio-3767, at ¶ 24 (citation omitted). Rohde's testimony indicated that, due to the presence of the preservative in the blood sample, the lack of refrigeration would not affect the reliability of the test results, even if bacteria were present in the blood. Furthermore, the Ohio Supreme Court, in State v. Plummer (1986),22 Ohio St.3d 292, found no violation of Ohio Adm. Code 3701-53-05(F) when a *Page 10 
urine specimen went unrefrigerated for a period of one hour and twenty-five minutes prior to mailing, and again went unrefrigerated for a period of three to four hours after the specimen had been delivered to the laboratory. Id. at 294-295. Consequently, we cannot conclude that Trooper Smith's retention of the blood specimen in an unrefrigerated state for six hours before mailing was a violation. "[W]ere we to agree * * * that any deviation whatsoever from the regulation rendered the results of a [test] inadmissible, we would be ignoring the fact that strict compliance is not always realistically or humanly possible."Bumside, 2003-Ohio-5372, at ¶ 34 (citation omitted).
 {¶ 27} Nor do we conclude that an eight-day period required for the mailing of the specimen in this case was unreasonable. Turnau testified that such delays are not uncommon, and may range as high as 10 to 12 days. Furthermore, while in the U.S. mail, the specimen is clearly "in transit," within the contemplation of Ohio Admin. Code 3701-53-05(F), and thus, did not require refrigeration for that period.
 {¶ 28} For the foregoing reasons, the trial court did not err in denying Price's motion to suppress. His first assignment of error is, therefore, without merit.
 {¶ 29} In his second assignment of error, Price alleges that the trial court erred when imposing his sentence by failing to follow R.C.2929.11(B), which requires a felony sentence to be "consistent with sentences imposed for similar crimes committed by similar offenders." Relying on former R.C. 2929.14(B), Price argues that, as a first time offender, he was entitled to a presumption of a minimum sentence, unless the court made a determination that the shortest prison term would demean the seriousness of the offender's conduct, or would not adequately protect the public from future crimes. Citing to authority from other appellate districts, Price further argues that the trial court *Page 11 
was required to engage in a case-by-case comparison between similarly-situated offenders prior to imposing sentence. We disagree.
 {¶ 30} Pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court severed R.C. 2929.14(B), which required the trial court to make factual findings prior to imposing a more-than-the-minimum sentence, and R.C. 2929.14(E)(4), which required the trial court to make factual findings prior to imposing consecutive sentences. Id. at paragraphs one through four of the syllabus. Subsequent toFoster, courts now "have full discretion to impose a prison sentence within the statutory range and are no longer, required to make findings or give their reasons for imposing * * * consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus (emphasis added).
 {¶ 31} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). In addition to being consistent with other sentences imposed for similar crimes, a felony sentence must be "reasonably calculated" to achieve the overriding purposes of felony sentencing and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim." R.C. 2929.11(B). A trial court possesses "broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines." State v. Smith (June 11, 1999), 11th Dist. No. 98-P-0018, 1999 Ohio App. LEXIS 2632, at *8.
 {¶ 32} In the case sub judice, the trial court sentenced Price to six years imprisonment for Aggravated Vehicular Homicide and three years imprisonment for Aggravated Vehicular Assault, to be served consecutively. Both of these sentences fall *Page 12 
within the mid-range of sentences authorized by R.C. 2929.14(A)(2) and (3), respectively. As a general rule, sentences that fall within the statutory range do not violate the constitutional provision regarding excessive punishments. State v. Gladding (1990), 66 Ohio App.3d 502,513, citing McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69.
 {¶ 33} This court has stated that, although "a trial court is required to engage in the analysis set forth by R.C. 2929.11(B), to ensure the consistency of sentences," a court is not required "to make specific findings on the record" in this regard. State v. Newman, 11th Dist. No. 2002-A-0007, 2003-Ohio-2916, at ¶ 10. "[I]t is not the trial court's responsibility to research prior sentences from undefined, and largely unavailable, databases before reaching its sentencing decision."State v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987, at ¶ 12. "In short, a consistent sentence is not derived from a case-by-case comparison; rather, it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency." State v.Swiderski, 11th Dist. No. 2004-L-112, 2005-Ohio-6705, at ¶ 58. "Thus, the only way for Appellant to demonstrate that his sentence was `inconsistent' * * * is if he establishes that the trial court failed to * * * consider the * * * guidelines contained in [Ohio's sentencing statutes]." State v. Romig, 11th Dist. No. 2007-L-096, 2008-Ohio-525, at ¶ 75 (citation omitted).
 {¶ 34} Price fails to meet this burden. Our review of the sentencing transcript shows that the trial court explicitly considered the relevant statutory factors before imposing sentence, including the purposes and principles of felony sentencing. While this may have been the first accident caused by Price while driving under the influence, the record shows that he had three previous convictions for that offense. Long was *Page 13 
killed; Morgan was permanently injured. Morgan's son, Colin Stinson, testified to his deep affection for Long, the renewed joy he had brought to his mother's life, and the grief his loss has caused her family. Morgan testified to her own sense of loss, and the damage Long's death had caused to her children.
 {¶ 35} There is also evidence that the trial court appropriately considered the seriousness and recidivism factors of R.C. 2929.12 prior to the imposition of sentence. R.C. 2929.12(B), setting forth factors making a crime more serious, requires trial courts to consider whether the victims of a crime suffered "serious physical, psychological, or economic harm as the result of the offense." R.C. 2929.12(B)(2). The harm suffered by Long and Morgan, death, and permanent injury/loss of a loved one, respectively, were obviously enormous.
 {¶ 36} R.C. 2929.12(D), setting forth factors which make recidivism more likely, requires trial courts to consider whether an offender has responded to previous sanctions for criminal conduct; whether an offender's conduct was related to alcohol and drug abuse which he or she has refused to acknowledge; and, whether an offender has shown genuine remorse for his actions. R.C. 2929.12(D)(3), (4) and (5). With regard to these factors, the court found recidivism more likely based on the fact that Price's prior convictions for OVI failed to cause any change in his behavior, and based upon the fact that Price claimed his erratic driving that day was caused by being hit in the head by a golf ball, rather than intoxication.
 {¶ 37} In sum, there is plentiful evidence in the record indicating the trial court considered the appropriate factors prior to imposing greater than the minimum *Page 14 
sentences, and ordering that such sentences be served consecutively. Price's second assignment of error is without merit.
 {¶ 38} In his third assignment of error, Price claims the trial court deprived him of his Fifth Amendment right against self-incrimination during sentencing, by referencing his written statement to the Adult Parole Authority as a basis for its finding that he refused to acknowledge his drinking problem and lacked remorse for his actions. This alleged statement to his probation officer suggested that his erratic driving was caused by being hit in the head by a golf ball and lack of sleep, rather than intoxication.
 {¶ 39} As an initial matter, we note that Price pled no contest to the charges. Pursuant to Crim.R. 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment." In the case sub judice, Price pled no contest to Aggravated Vehicular Homicide, and Aggravated Vehicular Assault, both of which require the crime be "the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code [Driving While Under the Influence of Alcohol or Drugs]." R.C.2903.06(A)(1)(a) and 2903.08(A)(1)(a). Thus, Price's plea, while not a statement of his guilt, served as an admission to the truth of the fact that he had operated his vehicle while under the influence when the crimes were committed.
 {¶ 40} Price has failed to demonstrate how his alleged "refusal to admit he drank alcohol prior to the accident" resulted in a harsher sentence than he would have otherwise received. Pursuant to App.R. 9(B), it is an appellant's duty to include within the record any material pertinent to the errors assigned. State v. Fritz, 11th Dist. No. 2005-P-0094, 2006-Ohio-5173, at ¶ 6 (citation omitted). In the instant case, the record *Page 15 
includes neither the PSI report nor any other material from the adult parole authority. Consequently, we are "obligated to presume the validity of the trial court's proceedings and affirm." Id. at ¶ 7, citing Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199 andLile v. Snider (Mar. 8, 1985), 11th Dist. No. 3464, 1985 Ohio App. LEXIS 6017, at *4.
 {¶ 41} Price's third assignment of error is without merit.
 {¶ 42} In his fourth assignment of error, raised by means of a supplemental brief, Price asserts that the trial court erred by ordering him to pay fines totaling $23, 500.00 and costs, without considering his present and future ability to pay, as required by R.C. 2929.19(B)(6). The state counters that the trial court stated it had read the PSI report, which contained Price's financial information, and that this was sufficient to meet the criteria of R.C. 2929.19(B)(6), pursuant to this court's holding in State v. Ankrom, 11th Dist. No. 2006-L-124,2007-Ohio-3374.
 {¶ 43} Although the trial court made no mention in the transcript of the sentencing hearing that it had considered Price's present and future ability to pay financial sanctions, it did state that it had considered the PSI report. The court also stated that it considered both the PSI report and Price's ability to pay in the judgment entry of sentence. This court has held that "the requirements of R.C. 2929.19(B)(6) are met when the trial court indicates in its judgment entry that it has considered the offender's present and future ability to pay." State v.Anderson, 172 Ohio App.3d 603, 2007-Ohio-3849, at ¶ 24 (citation omitted). Furthermore, in view of the absence of any information allowing us to review Price's alleged error, as noted in our disposition of his *Page 16 
third assignment of error, we are bound to affirm the lower court's judgment on the basis of the record before us.
 {¶ 44} Price's fourth, supplemental assignment of error is without merit.
 {¶ 45} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed. Costs to be taxed against appellant.
TIMOTHY P. CANNON, J., concurs
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.
[1] On October 26, 2006, after the state had responded to Price's initial Demand for Discovery, Price filed a "Supplemental Demand for Discovery," in which he requested "copies of all maintenance records of the equipment used for the testing of defendant[']s blood during the past twelve months." The state did not respond to this request. Prior to filing his motion to suppress, however, Price did not file a motion to compel. This court has held that "[i]n order to require the state to respond specifically and particularly to issues raised in a motion, an accused must raise the issues that can be supported by facts, eitherknown or discovered, that are specific to the issues raised." State v.Hernandez-Rodriguez, 11th Dist. No. 2006-P-0121, 2007-Ohio-5200, at ¶ 51 (citations omitted) (emphasis added). The combination of Price failing to file a motion to compel discovery of this information, and failing to address this issue in his motion to suppress, renders the state's "burden * * * to show substantial compliance with those regulations * * * general and slight." Id. (citations omitted).