DECISION.
{¶ 1} After entering a plea of no contest, defendant-appellant Amber Douglas was convicted of one count of driving under the influence of alcohol, a violation of R.C.4511.19(A)(6). After her arrest, Douglas filed a motion to suppress, among other things, the results of her breath-alcohol test. R.C. 4511.19(D)(1) provides that the analysis of bodily substances must be conducted in accordance with methods approved by the Ohio Director of Health, as codified in the Ohio Administrative Code. The Ohio Supreme Court has held that the state must show substantial compliance with Director of Health regulations to ensure the reliability of breath-alcohol test results, excusing only minor procedural deviations.[1]
After Douglas was arrested, a breath-alcohol test was administered, and she registered .274 grams of alcohol per 210 liters of breath.
 {¶ 2} On appeal, Douglas raises one assignment of error,[2] that the trial court erred in not granting her motion to suppress. Douglas argues that the breath-alcohol test results of a BAC DataMaster machine should not have been admissible because the state failed to show substantial compliance with several different Ohio Department of Health regulations in Ohio Adm. Code 3701-53. We note that Douglas has raised no challenge concerning any officer's observations made during her performance of nonscientific standardized field sobriety tests.[3]
 {¶ 3} An appellate court's review of a motion to suppress involves mixed questions of law and fact.[4] When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence.[5] We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.[6] However, with respect to the trial court's conclusions of law, we must apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard.[7]
 {¶ 4} Douglas first makes a generic argument that the state "failed to show any evidence as to compliance with OAC 3701-53-01(A), which requires that the results of instrument checks, records of maintenance and repairs have been retained." We disagree. The record includes testimony from Officer Leist of the North College Hill Police Department, as well as exhibits, illustrating the performance of and recordkeeping surrounding the routine checks, repairs, and maintenance of the BAC DataMaster machine. Thus, we hold that the state showed substantial compliance on this issue.[8]
 {¶ 5} Ohio Adm. Code 3701-53-01(B) requires that there be two manuals, one a written procedure manual for performing the substance tests to be kept in the area where the analytical tests are performed and the other an operational manual provided by the instrument's manufacturer to be kept where the breath tests are performed. Douglas argues that the state failed to produce any evidence that the manufacturer's operational manual was kept where the breath test was performed. The state concedes that the record does not include any testimony showing substantial compliance with this regulation. But the state argues that because there was no evidence that proper testing procedures were not followed, there was no evidence that Douglas suffered any prejudice by the "actual location of the manual."
 {¶ 6} We note that the language used in the regulation about where the operational manual is to be kept is mandatory: "the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed." While there is no question that a BAC DataMaster instrument is approved for alcohol testing, pursuant to Ohio Adm. Code 3701-53-02(A), we are unable to determine from the record where the "actual location of the manual" was, much less that it was kept in the vicinity as required by Ohio Adm. Code3701-53-01(B).
 {¶ 7} The Ohio Supreme Court has rejected the argument that where the state fails to establish substantial compliance, the results should be admitted when the defendant can show no prejudice.[9] The court stated that "any evidence of prejudice would have been relevant only after the state demonstrates substantial compliance with alcohol-testing regulations."[10] Moreover, because we, and the state, have been unable to find any authority to support a conclusion that this noncompliance was a "minor procedural deviation," we must agree with Douglas that the state made no showing of substantial compliance with this regulation.[11]
 {¶ 8} Douglas next argues that the state failed to produce any evidence of compliance with Ohio Adm. Code 3701-53-04(C), which provides, in part, "The instrument check solution container shall be retained for reference until the instrument check solution is discarded." Section (C) in its entirety focuses on the instrument check solution. In this case, Officer Leist, as the senior operator of the BAC DataMaster machine in the North College Hill Police Department, testified at length about the instrument check solution, the manner in which the solution was utilized, documentation, and how the solution was stored subsequent to its first use. The state submitted pertinent calibrating solution certificates. While the record does not show any specific discussion on the record about retained containers, based on all the testimony and evidence in the record concerning the instrument check solution and its use and maintenance, we conclude that the state showed that there was substantial compliance with Ohio Adm. Code 3701-53-04(C).
 {¶ 9} Douglas argues that the state did not test deep lung (alveolar) air as required by Ohio Adm. Code 3701-53-02(C), which provides, "Breath samples of deep lung (alveolar) air shall be analyzed for purposes of determining whether a person has a prohibited breath alcohol concentration with instruments approved under paragraphs (A) and (B) of this rule." As the Ohio Supreme Court noted in State v. Steele,[12] the reason for waiting twenty minutes before testing a suspect is to eliminate the possibility that the test result is a product of anything other than the suspect's deep lung breath. Because the accuracy of the test results can be adversely affected if the suspect either ingests material orally, like food or drink, or regurgitates material internally, by belching or vomiting, the suspect must be observed for twenty minutes to verify that no external or internal material may cause a false reading.[13] The transcript in this case shows that Douglas was stopped at approximately 2:55 a.m., and that the breath test was administered at approximately 3:47 a.m. Douglas does not argue that there was any violation of the twenty-minute period or that the test result was affected by, for example, her having ingested something orally. On this record, we hold that the state showed substantial compliance with Ohio Adm. Code 3701-53-02(C).
 {¶ 10} Douglas's final argument is that the testing officer's permit was not valid because it was issued on November 26, 2001, and would have expired by June 30, 2003, when Douglas's breath test was administered. Ohio Adm. Code 3701-53-09(C) was amended on September 30, 2002, so that permits are now valid for only one year from the date of issuance, instead of the two-year period previously allowed. Pursuant to R.C. 1.48, "a statute is presumed to be prospective in its operation unless expressly made retrospective." The Ohio Supreme Court has recognized that an administrative rule, promulgated in accordance with statutory authority, has the force and effect of law.[14] Thus, like a statute, an administrative rule is presumed to have a prospective effect unless a retrospective intent is clearly indicated.[15] We find nothing in the amended regulation to suggest that it was intended to operate retrospectively. Thus, as two other appellate courts[16] have already held, we conclude that the one-year expiration period applies only to permits issued after September 30, 2002. In the case sub judice, because the testing officer's permit was issued on November 26, 2001, it was still valid at the time of Douglas's test on June 30, 2003. Thus, Douglas's argument concerning the testing officer's lack of a valid permit is without merit.
 {¶ 11} In summary, we hold that there was competent and credible evidence that the state substantially complied with all but one of the specific Ohio Department of Health regulations governing the testing of blood alcohol levels raised by Douglas. The regulation requiring that the operational manual be present where the breath test is performed was not substantially complied with. Lacking evidence in the record of even the existence of an operating manual, much less where it was located, and considering that the language used in the manual regulation is mandatory, and that the manual requirement appears at the beginning of the alcohol testing chapter, we cannot say that the departure from this regulation was a minor procedural deviation. Thus, we sustain Douglas's single assignment of error.
 {¶ 12} Accordingly, we reverse the trial court's judgment and remand this case for further proceedings consistent with this court's decision.
Judgment reversed and cause remanded.
Gorman and Sundermann, JJ., concur.
[1] See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 34.
[2] For the record, we note that briefs filed by the defendant-appellant have not been signed by counsel.
[3] See State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37,801 N.E.2d 446, at ¶ 14-15.
[4] See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
[5] See State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583.
[6] See Burnside, 100 Ohio St.3d 152, at ¶ 8.
[7] See id.
[8] Compare State v. Lipsky, 1st Dist. No. C-010473, 2002-Ohio-1141 (failure of the state to adduce any evidence of compliance with the recordkeeping requirement compelled the granting of the motion to suppress).
[9] See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 36.
[10] See id.
[11] Compare State v. Reed, 3rd Dist. No. 15-03-08, 2004-Ohio-393, at ¶ 8 (testimony clearly established there was a manual located in the same room where defendant performed his breath test).
[12] 52 Ohio St.2d 187, 190, 370 N.E.2d 740.
[13] See id.
[14] See Youngstown Sheet Tube Co. v. Lindley (1988),38 Ohio St.3d 232, 234, 527 N.E.2d 828.
[15] See Martin v. Ohio Dept. of Human Services (1998),130 Ohio App.3d 512, 524, 720 N.E.2d 576, citing Batchelor v.Newness (1945), 145 Ohio St. 115, 120, 60 N.E.2d 685.
[16] See State v. Baker, 5th Dist. No. 03-CA-77, 2004-Ohio-1769, at ¶ 32; State v. Brunson, 4th Dist. No. 04CA4,2004-Ohio-2874, at ¶ 16; State v. Lemaster, 4th Dist. No. 04CA2764, 2004-Ohio-4523, at ¶ 17-18.