DECISION. *Page 2 
{¶ 1} In case numbers C-060274 and C-060275, appellant Joseph Hutson appeals from the trial court's judgment convicting him of driving under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(b), respectively. Hutson also appeals his conviction for failure to maintain reasonable control, but he raises no assignments of error in connection with that appeal. We therefore dismiss appeal number C-060276. And, because we find no merit to Hutson's challenge of his OVI convictions, we affirm the judgment of the lower court in case numbers C-060274 and C-060275.
Facts
 {¶ 2} Dale Becker awoke at 2:45 a.m. when he heard a noise coming from outside his house. He got out of bed to investigate and discovered that a car had crashed in his front yard. Becker testified that the car had stopped roughly 15 feet from his front door, that the back windshield had been broken, that a tree in his front yard had been knocked down, and that clothing and other debris were scattered across his lawn. The car was inoperable, but its windshield wipers were running. Becker was not sure what had caused him to wake up, but he hypothesized that it might have been the noise that the car's wipers had made on the dry windshield.
 {¶ 3} Becker's wife called the police. Once they arrived, Becker approached the car with Deputy David Siciliano and saw Hutson lying unconscious in a fully reclined passenger's seat. Siciliano testified that Becker's feet were resting on the steering wheel. Both Siciliano and Becker smelled alcohol when they approached the *Page 3 
car. Siciliano testified that Hutson had "a strong odor [of alcohol] emitting from his breath."
 {¶ 4} Hutson regained consciousness and attempted to get out of the car. Siciliano noted that Hutson's eyes were watery and bloodshot. Despite efforts by Siciliano to have him remain seated, Hutson got out of the car, fell twice, and rolled down an embankment. Paramedics at the scene eventually placed Hutson on a backboard and transported him to the hospital. Siciliano followed. At the hospital, Siciliano administered three nonstandardized field sobriety tests, one of which Hutson had difficulty performing. Siciliano then arrested Hutson for OVI.
 {¶ 5} After his arrest, Hutson consented to a blood-alcohol test. At 4:15 a.m., nurse Celeste Hoyt drew Hutson's blood. She testified that she had followed the instructions on a standardized blood-test kit that police had supplied to her. Hoyt stated that she had used a nonalcoholic betadine swab to cleanse Hutson's skin, but that she could not recall whether the vials she had used contained a solid anticoagulant. At the suppression hearing, the state submitted into evidence an unused blood-test kit that contained vials with an anticoagulant inside. Siciliano, who was present when Hoyt drew Hutson's blood, testified that the contents of the blood kit used on Hutson were identical to the contents of the unused kit. After Hoyt had collected Hutson's blood, Siciliano transported the sealed blood vials to a sheriffs station and placed them in a refrigerator. Deputy Phillip Herbst testified that the vials remained unrefrigerated for approximately two hours and five minutes while he processed them to ensure that they were properly sealed and that the evidence had been handled in compliance with certain guidelines. *Page 4 
 {¶ 6} Forensic toxicologist Robert Topmiller tested Hutson's blood. Topmiller testified that he could not tell if the vials used to collect Hutson's blood had contained an anticoagulant because an anticoagulant would have mixed with blood upon contact, and because the evidence seal covered up the portion of the vial that generally indicated whether it contained an anticoagulant.
The Blood-Test Results
 {¶ 7} In his first assignment of error, Hutson asserts that the trial court erred in overruling his motion to suppress his blood-test results.
 {¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact.[1] We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.[2] With respect to the trial court's conclusions of law, however, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard.[3]
 Timeliness of the Draw {¶ 9} Hutson first asserts that the state failed to establish that his blood was drawn within two hours of the alleged OVI violation, as required by former R.C. 4511.19(D)(1).[4] He argues, therefore, that the trial court should have suppressed the test results for the R.C.4511.19(A)(1)(b) "per se" offense.[5] Hutson also argues that the out-of-time test results should have been suppressed for the R.C.4511.19(A)(1)(a) offense because the state failed to otherwise follow proper procedures, or to support the results with expert testimony.[6]
We disagree. *Page 5 
 {¶ 10} The state produced sufficient circumstantial evidence to establish that Hutson had been operating his car at 2:45 a.m.. Becker testified that he awoke at 2:45, looked out his window, and saw that Hutson's car had crashed on his front lawn. Given the gravity of the car accident and the proximity of the crash to Becker's home, we hold that it was reasonable for the trial court to infer that the sound of the accident woke Becker up. And it was undisputed that Hoyt drew Hutson's blood at 4:15 a.m. — an hour and a half after the alleged OVI incident. We therefore find no error in the trial court's conclusion that Hutson's blood was drawn within the statutory time limit. On this basis, Hutson's timeliness argument pertaining to both OVI charges fails.
 Substantial Compliance {¶ 11} Hutson next argues that the results of his blood test should have been suppressed because the state failed to substantially comply with the requirements of Ohio Adm. Code 3701-53-05. Specifically, Hutson challenges the trial court's findings (1) that Hoyt had used a vacuum container containing a solid anticoagulant to collect Hutson's blood, (2) that Hoyt had used the proper type of swab to cleanse Hutson's skin before drawing his blood, and (3) that the state had substantially complied with the refrigeration requirement of Ohio Adm. Code3701-53-05(F).
 {¶ 12} Where, as here, a defendant challenges the validity of blood-alcohol test results in a pretrial motion, the state has the burden to demonstrate that the test was administered in substantial compliance with the regulations prescribed by the Ohio Department of Health.[7] Hutson first cites State v. Burnside[8] in support of his argument that the trial court should have suppressed the results of his blood test. In *Page 6 Burnside, the supreme court held that substantial compliance with Ohio Adm. Code 3701-53-05(C) requires blood to be drawn into a vacuum tube containing a solid anticoagulant.[9] In that case, however, the state produced absolutely no evidence that the proper procedure was followed. This case is distinguishable. Hoyt testified that the vials she had used were vacuum containers. And Siciliano, who had been present when Hoyt drew Hutson's blood, testified that the blood kit Hoyt had used was identical to the contents of an unused kit that was admitted into evidence. The unused kit contained two vials, each with an anticoagulant inside. And while Topmiller testified that he could not tell if the vials containing Hutson's blood had contained an anticoagulant, it was within the province of the trial court to believe Siciliano's testimony.[10] So, unlike in Burnside, the trial court in this case had before it competent, credible evidence that Hoyt had complied with Ohio Adm. Code 3701-53-05(C) when drawing Hutson's blood.[11] This argument has no merit.
 {¶ 13} We also find no merit to Hutson's argument that the state failed to establish substantial compliance with Ohio Adm. Code3701-53-05(B). That provision states, "When collecting a blood sample, an aqueous solution of a nonvolatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic."[12] Hoyt testified that she had used a non-alcoholic betadine swab to cleanse Hutson's skin before drawing his blood. We therefore find no error in the trial court's conclusion that the state had substantially complied with Ohio Adm. Code 3701-53-05(B). *Page 7 
 {¶ 14} Next, Hutson argues that the state failed to substantially comply with Ohio Adm. Code 3701-53-05(F), which requires that all blood specimens be refrigerated unless in transit or under examination. InState v. Plummer,[13] the supreme court held that the state had substantially complied with this regulation where a sample was not refrigerated for five hours. The supreme court recently reaffirmed this holding in State v. Mayl.[14] In the present case, Hutson's blood was not refrigerated for approximately two hours and five minutes. On the authority of Plummer and Mayl, we therefore hold that the state demonstrated substantial compliance with this regulation.
 {¶ 15} Hutson's first assignment of error is overruled.
Hutson's Arrest
 {¶ 16} In his second assignment of error, Hutson argues that Siciliano did not have probable cause to arrest him. Probable cause to arrest exists where an officer possesses sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed.[15] To determine if probable cause existed in this case, we must examine the totality of facts and circumstances surrounding the arrest.[16]
 {¶ 17} We find no error in the trial court's conclusion that Siciliano had probable case to arrest Hutson for OVI. Siciliano testified that Hutson was in the driver's seat of a car that had crashed on Becker's lawn, that Hutson smelled of alcohol, that he had bloodshot and watery eyes, and that his motor skills were *Page 8 
compromised. These facts and circumstances gave rise to probable cause to arrest.[17] Hutson's second assignment of error is overruled.
 {¶ 18} The judgment of the trial court is affirmed.
PAINTER, P. J., HILDEBRANDT and WINKLER, JJ.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
[2] State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583.
[3] State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629,833 N.E.2d 1216, at ¶ 41.
[4] Since Hutson's arrest, R.C. 4511.19(D) has been amended to allow bodily substances to be collected up to three hours after an alleged OVI violation.
[5] See Newark v. Lucas (1988), 40 Ohio St.3d 140, 532 N.E.2d 130, paragraph one of the syllabus.
[6] See id.
[7] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 24.
[8] See id.
[9] Id. at paragraph one of the syllabus.
[10] See Fanning, supra.
[11] Cf. State v. Floyd, 2nd Dist. No. C.A. 20647, 2005-Ohio 1573.
[12] Ohio Adm. Code 3701-53-05(B).
[13] (1986), 22 Ohio St.3d 292, 294-295, 490 N.E.2d 902.
[14] Mayl, supra, at fn. 2.
[15] Gerstein v. Pugh (1975), 420 U.S. 103, 111-112, 95 S.Ct. 854;Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223.
[16] See Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317;State v. Homan, 89 Ohio St. 3d 421, 2000-Ohio-212, 732 N.E.2d 952, superseded by statute as stated in State v. Schmitt, 101 Ohio St. 3d 79,2004-Ohio-37, 801 N.E.2d 446
[17] Cf. Oregon v. Szakovits (1972), 32 Ohio St.2d 271,291 N.E.2d 742. *Page 1