DECISION. *Page 2 
{¶ 1} Defendant-appellant Christopher Breving was charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), driving with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d), and speeding in violation of Cincinnati Municipal Code 506-8. Breving filed a motion to suppress the results of his breath test on the basis that they were unreliable because the test had not been administered in compliance with Ohio Department of Health regulations. Specifically, Breving alleged that the calibration solution had not been refrigerated as required by Ohio Adm. Code 3701-53-04(C). The trial court denied Breving's motion. Breving pleaded no contest to and was convicted of driving with a prohibited concentration of alcohol in his breath. The other charges were dismissed.
 {¶ 2} Breving's sole assignment of error alleges that the trial court erred in denying his motion to suppress the results of his breath test. Breving argues that the prosecution failed to show that the solution used to calibrate the Intoxilyzer machine was properly refrigerated.
 {¶ 3} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact.[1] We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.[2] For the trial court's conclusions of law, however, we must review de novo and decide whether the facts satisfy the applicable legal standard.[3]
 {¶ 4} The police officer charged with calibrating the Intoxilyzer machines in all five districts of the Cincinnati Police Department testified that the calibration solution *Page 3 
was refrigerated while in storage. The solution was not refrigerated during the time the officer travelled to all five districts to calibrate the different machines. District Two, where Breving's test had been conducted, was the last stop on the route. By the time District Two's Intoxilyzer machine was calibrated, the solution had been out of refrigeration for approximately four and one-half hours.
 {¶ 5} Ohio Adm. Code 3701-53-04(C) provides, in pertinent part, that "[a]fter first use, instrument check solutions shall be kept under refrigeration when not being used." In State v. Ginocchio,[4] we held under a similarly worded regulation "that the phrase `while in use' includes the time reasonably necessary to transport the solution from the refrigeration to the place of calibration."[5] The Department of Health regulation did not prohibit the unrefrigerated transport of the calibration solution from district to district because the solution was "in use" for the approximately six or seven hours it took to calibrate the Intoxilyzer machines at all five Cincinnati police districts.[6]
The Eighth Appellate District reached the same conclusion in Brook Parkv. Seidner[7] holding that where the calibration solution had been "unrefrigerated for several hours," "the solution was unrefrigerated only for such time as was reasonably necessary to calibrate the breathalyzer, including the time needed to transport the machine and the solution to Massillon, Ohio."
 {¶ 6} Breving argues that Ginocchio is not controlling because it was decided prior to the Ohio Supreme Court's decision in State v.Bumside[8] and our decision in State v. Douglas[9] which held that deviation from a mandatory Department of Health *Page 4 
regulation does not constitute substantial compliance with that regulation. Burnside and Douglas are inapplicable. InGinocchio, we held that the procedure used to calibrate the machines did not deviate in any way from the Department of Health regulation because the phrase "in use" included the time spent transporting the solution to the testing sites.
 {¶ 7} We point out that Breving's reliance on Ohio Adm. Code 701-53-05(F), which states, "While not in transit or under examination, all blood and urine specimens shall be refrigerated," is misplaced. Blood and urine are the actual body fluids to be tested. Calibration solutions are not body fluids. The Department of Health, which possesses the requisite scientific expertise, [10] has promulgated different rules for body fluids and calibration solutions.
 {¶ 8} We hold that the calibration solution was "being used" in this case within the meaning of Ohio Adm. Code 3701-53-04(C) and, therefore, that refrigeration was not required during the time it took to transport the solution to all five police districts and to calibrate the different Intoxilyzer machines. The assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
PAINTER and DINKELACKER, JJ., concur.
[1] See State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972;State v. Hutson, 1st Dist. Nos. C-060274, C-060275, and C-060276,2007-Ohio-1178.
[2] See State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[3] See State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629,833 N.E.2d 1216; State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71.
[4] (May 21, 1985), 1st Dist. No. C-840529.
[5] See id.; State v. Pieper (Oct. 23, 1985), 1st Dist. No. C-850024;State v. Rosskopf (June 26, 1985), 1st Dist. No. C-840778.
[6] See id.
[7] (Nov. 12, 1998), 8th Dist. No. 73648.
[8] See fn. 3, supra.
[9] 1st Dist. No. C-030897, 2004-Ohio-5726.
[10] See State v. Burnside, supra, at ¶ 32. *Page 1