JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, City of Cleveland ("City"), filed a Crim. R. 12(K) appeal after the Cleveland Municipal Court granted defendant-appellee, Lawrence Hunter's, motion to suppress. For the following reasons, we affirm in part, reverse in part, and remand.
 {¶ 2} Hunter was arrested for driving while under the influence of alcohol under two subsections of the Cleveland Codified Ordinance ("CCO") 433.01: (1) 433.01(a)(1), operating a vehicle under the influence of alcohol or drugs; and (2) 433.01(a)(4), operating a vehicle with a prohibited breath-alcohol concentration. Hunter moved to suppress the results of the breath-alcohol test and the field sobriety tests. The following evidence was adduced at the suppression hearing.
 {¶ 3} Officer Bryan Moore testified for the City. He worked at the Cleveland Police Department for over ten years. He also completed a course in Alcohol Detention Apprehension and Prosecution ("ADAP") provided by the City of Cleveland's Police Academy. A copy of Officer's Moore's certificate showing that he completed the 40-hour course in October 2005 was entered into evidence.
 {¶ 4} On September 18, 2007, the Cleveland Police Department set up a sobriety checkpoint at Union and East 72nd Street. Officer Moore was the contact person at the checkpoint because he was ADAP certified. The officers *Page 4 
had previously determined that every third car would be stopped at the checkpoint. Hunter was not the "third car," so he was directed to go around the checkpoint. But rather than drive around the checkpoint, Hunter drove into the area where the officers were conducting the sobriety check.
 {¶ 5} Hunter drove up to where Officer Moore was standing. Officer Moore walked up to Hunter's window and told him that they were conducting a sobriety checkpoint. He asked Hunter if he "had anything to drink that night." Hunter told him that he had one beer. Officer Moore smelled alcohol coming from Hunter when he spoke. Officer Moore asked Hunter to recite the alphabet while he was still seated in his vehicle. Hunter tried to recite the alphabet three times, but each time he "stopped at T." Officer Moore asked Hunter to pull his vehicle into the parking lot, where the B.A.T. Mobile was located so that he could conduct field sobriety tests.
 {¶ 6} Officer Moore testified that he administered three field sobriety tests, including the one-leg stand, the walk-and-turn test, and the horizontal gaze nystagmus ("HGN"). For each test, Officer Moore indicated that he was taught how to administer the test in his ADAP course. He also stated that before each test, he made sure that Hunter did not have any impairment that would prevent him from performing the test, instructed Hunter how to perform *Page 5 
the test, and demonstrated the test for Hunter.[1] He further explained that Hunter failed all three field sobriety tests.
 {¶ 7} Officer Moore filled out an "Alcohol/Drug Influence Report Form" while Hunter was performing the tests to record his observations, which was entered into evidence. In the section titled "Observer's Opinion," Officer Moore indicated that the first thing that led him to suspect that Hunter was under the influence of alcohol was that he "could not follow officer's directions [he was] told go to left [but] he went right." He also reported that Hunter's odor of alcohol was "moderate." In a section titled "Performance Tests," Officer Moore checked or wrote the following for each test:
 {¶ 8} "1. One Leg Stand: "couldn't even perform"
 {¶ 9} "2. Walk and Turn: "staggered, stepped off line, lost balance"
 {¶ 10} "3. Alphabet: "confused" and "5 times stopped at T 3 times"
 {¶ 11} "4. HGN: "Both eyes prior to 45 degrees and max."
 {¶ 12} Officer Moore further indicated on the form that Hunter understood the directions for each test and that Hunter told him that he "drank one beer [but] could not tell me the size." Finally, Officer Moore checked that the effects of alcohol on Hunter were "obvious" and that he was "unfit" to drive. The form was signed by Officer Moore as the arresting officer and witnessed by Officer Brian Dorin.
 {¶ 13} After the field sobriety tests were completed, Officer Moore took Hunter into the B.A.T. Mobile, where Officer Dorin administered the breath-alcohol test. *Page 6 
 {¶ 14} Officer Dorin testified that he had been a Cleveland police officer for 22 years, and had been in the traffic/motorcycle unit for 16 years. He was certified on December 8, 2006 as a senior operator to perform "breath tests in accordance with such laws and rules, using the BAC DataMaster Instrument." A copy of his certification by the Ohio Department of Health was entered into evidence.
 {¶ 15} Officer Dorin first advised Hunter that he had to read the "2255" Administrative License Suspension Form to him, which he did. He then asked Hunter to read the form himself and told Hunter that if he had any questions he could ask him when he was done reading the form. Officer Dorin testified that Hunter read it and then signed it.
 {¶ 16} Officer Dorin explained that the BAC DataMaster has to be calibrated every seven days. Evidence was then admitted showing that the BAC machine that he used to test Hunter's breath-alcohol concentration had been calibrated three days prior to Hunter's arrest. The bottle of the solution used to calibrate the machine was also entered into evidence. Officer Dorin explained that the solution was good from July 13, 2007 to October 13, 2007.
 {¶ 17} After Hunter signed the 2255 form, Officer Dorin explained that, as required, he observed Hunter for approximately 20 minutes while he asked him identifying information and reviewed paperwork with him. He then administered the test to Hunter, who had a breath-alcohol concentration of .127 grams of alcohol per 210 liters of breath. A printout of Hunter's test results was entered into evidence.
 {¶ 18} Officer Dorin agreed on cross-examination that the operations manual for the BAC DataMaster was not in the B.A.T. Mobile; it was at the police station. *Page 7 
 {¶ 19} At the close of the hearing, the trial court granted Hunter's motion to suppress and excluded the results of the breath-alcohol test and the field sobriety tests. The City filed a Crim. R. 12(K) appeal, presenting three assignments of error for our review:
 {¶ 20} "[1.] The trial court erred when it suppressed Defendant's breath test result of .127 after the City presented sufficient evidence that the administration of the test substantially complied with the Ohio Department of Health Regulations set forth in the Ohio Administrative Code.
 {¶ 21} "[2.] The trial court erred when it suppressed the field sobriety test even after the [sic] showed that it substantially complied with amended Ohio Revised Code 4511.19(D)(b).
 {¶ 22} "[3.] The trial court erred in not allowing the officer's testimony of his observations of Defendant's performance during the administration of the field sobriety test."
Standard of Review
 {¶ 23} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at _8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. An appellate court reviewing a *Page 8 
motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. Burnside, supra, at _8.
 {¶ 24} In seeking to suppress the results of a breath analysis or field sobriety test, the defendant must set forth an adequate basis for the motion. State v. Shindler, 70 Ohio St.3d 54, 58, 1994-Ohio-452. The motion must state the "legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." Id.; Crim. R. 47.
 {¶ 25} Once an adequate basis for the motion has been established, the prosecutor then bears the burden of proof to demonstrate substantial compliance with the Ohio Department of Health ("ODH") regulations.Xenia v. Wallace (1988), 37 Ohio St.3d 216, 220. If the prosecutor demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he was prejudiced by anything less than strict compliance. Burnside, supra, at _23.
Breath-Alcohol Concentration
 {¶ 26} With respect to the breath-alcohol results, the trial court stated, "when I was listening to Officer Dorin's testimony also and with everything that *Page 9 
have to be complied with, and there was one major flaw. He did not have the books there, the instructions which states they have to be inside the vehicle, have to be next to the machine. They have to be — have to be a manual there and the manual was not there.
 {¶ 27} "So, the test will be suppressed because all of the factors for having the test. Everything else, the calibration was there. Unplugging the machine, in this Court's opinion, doesn't have anything to do with it not working right or working wrong as long as he calibrated it within the seven days, that's fine. And that's what he did. But, the one thing that was missing is the book, the manual.'
 {¶ 28} "So the test result will be suppressed."
 {¶ 29} Thus, the trial court suppressed the breath-alcohol test because it found that the City did not show substantial compliance with the ODH regulation set forth in Ohio Adm. Code 3701-53-01; i.e., the manufacture's operational manual was not in the area (in the mobile truck) where the breath tests were being conducted.
 {¶ 30} The City concedes that the manual was not in the mobile truck but argues that this fact alone does not render the test inadmissible. It maintains that it still established substantial compliance with the ODH regulations because it showed "substantial, even strict compliance" with every other requirement. Thus, the narrow issue here is whether substantial compliance *Page 10 
was satisfied if the manual was not located near the breath-testing machine when the test was performed, but all other ODH regulations were met. This court has not yet addressed this narrow question.
 {¶ 31} At the time of Hunter's arrest, Ohio Adm. Code 3701-53-01(B) provided:
 {¶ 32} "At least one copy of the written procedure manual required by paragraph (D) of the rule 3701-53-06 of the Administrative Code for performing blood, urine, or other bodily substance tests shall be on file in the area where the analytical tests are performed.
 {¶ 33} "In the case of breath tests using an approved evidential breath testing instrument ***, the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed."[2]
 {¶ 34} Three appellate districts have addressed this exact question. The First and the Eleventh Districts have held that when the operational manual is not located in the area where the breath tests are performed, substantial compliance cannot be met. See State v. Douglas, 1st Dist. No. C-030897, 2004-Ohio-5726 *Page 11 
and State v. Hernandez-Rodriguez, 11th Dist. No. 2006-P-0121,2007-Ohio-5200. The Twelfth District has held that substantial compliance can be met even if the manual is not present, because to hold otherwise would mandate strict compliance with the ODH regulations and that is not what is required. See State v. Morton, 12th Dist. No. CA98-10-131.
 {¶ 35} In suppressing the breath-alcohol tests, the First and Eleventh Districts focused on the fact that the language of Ohio Adm. Code 701-53-01(B) was mandatory and, thus, without the manual near the instrument, substantial compliance could not be met.
 {¶ 36} In Douglas, the First District stated:
 {¶ 37} "We note that the language used in the regulation about where the operational manual is to be kept is mandatory: `the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed.' While there is no question that a BAC DataMaster instrument is approved for alcohol testing, pursuant to Ohio Adm. Code 3701-53-02(A), we are unable to determine from the record where the `actual location of the manual' was, much less that it was kept in the vicinity as required by Ohio Adm. Code 3701-53-01(B).
 {¶ 38} "The Ohio Supreme Court has rejected the argument that where the state fails to establish substantial compliance, the results should be admitted *Page 12 
when the defendant can show no prejudice. The court stated that `any evidence of prejudice would have been relevant only after the state demonstrates substantial compliance with alcohol-testing regulations.' Moreover, because we, and the state, have been unable to find any authority to support a conclusion that this noncompliance was a `minor procedural deviation,' we must agree with Douglas that the state made no showing of substantial compliance with this regulation." (Internal citations omitted.) Id. at _6-7.
 {¶ 39} In Hernandez-Rodriguez, the Eleventh District relied onDouglas. It indicated that the language was mandatory, and then stated:
 {¶ 40} "While it is unclear how appellant was prejudiced by the state's failure to provide specific evidence of the location (or even existence) of the necessary manuals, the Supreme Court has held that such a demonstration is unnecessary at this point of the analysis. InBurnside, the Court determined that an inquiry into prejudice is relevant only after the state demonstrates substantial compliance. Id. at _36. We find no authority indicating this noncompliance was a `minor procedural deviation' and thus hold the state failed to substantially comply with this regulation. Douglas, supra, at _7."
 {¶ 41} We agree with the First and Eleventh Districts on this issue. The City's argument that the breath test was not rendered less reliable or accurate simply because the manual was not near the DataMaster machine would go to *Page 13 
the issue of whether Hunter was prejudiced by not having the manual there. The issue of prejudice is not relevant until the City establishes substantial compliance, which it failed to do here.
 {¶ 42} Accordingly, the trial court did not err when it suppressed the breath-alcohol concentration. The City's first assignment of error is overruled.
Field Sobriety Tests Results
 {¶ 43} In its second assignment of error, the City argues that the trial court erred when it suppressed the field sobriety tests because it showed that the officers substantially complied with the City of Cleveland's accepted testing standards as permitted under R.C. 4511.19(D). We disagree.
 {¶ 44} The City argues that Officer Moore's testimony established that he substantially complied with the field sobriety testing standards that he learned through his ADAP training. We agree with the City that accepted testing standards are not limited to the ones set forth by NHTSA. Under R.C. 4511.19(D)(4)(b), it provides that in any criminal prosecution for operating a vehicle under the influence of alcohol:
 {¶ 45} "*** if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and *Page 14 
generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration ***." (Emphasis added.)
 {¶ 46} Although the City is correct that other accepted testing standards may be used besides the NHTSA standards, our review of the record indicates that the City failed to introduce any evidence
whatsoever as to what the ADAP standards are and whether they are accepted standards. Moreover, the City did not introduce the ADAP manual into evidence to demonstrate that the officer substantially complied with the ADAP standardized tests, nor did it present any testimony as to what those standards are.
 {¶ 47} The facts in this case regarding this issue are identical to the facts in Gates Mills v. Mace, 8th Dist. No. 84826, 2005-Ohio-2191. As in Gates Mills, Officer Moore testified at the suppression hearing that he had been trained in administering the field sobriety tests through the ADAP. A certificate showing that he had been trained in this course was entered into evidence. He also explained each instruction that he gave to Hunter in depth, and even showed the trial court how he demonstrated the tests to Hunter. He further described in detail how Hunter performed each test. Officer Moore gave no testimony, however, regarding what the ADAP standards are for administering the tests; he *Page 15 
testified only regarding how he administered the tests and that he did so in accordance with his training.
 {¶ 48} In Gates Mills, this court concluded:
 {¶ 49} "In short, although the City introduced evidence as to which tests were conducted and how they were conducted, it did not introduce any evidence to prove that the tests were conducted in compliance with the NHTS A guidelines for the tests. Because the City did not do so, the results of the field sobriety tests should have been suppressed."
 {¶ 50} Since the facts here are indistinguishable from GatesMills regarding the manual for the ADAP guidelines, we find that the trial court did not err when it suppressed the results of the field sobriety tests.
 {¶ 51} The City's second assignment of error is overruled.
Police Officer's Observations as a Lay Witness
 {¶ 52} In its third assignment of error, the City argues that the trial court erred by not "allowing the officer's testimony of his observations of defendant's performance during the administration of the field sobriety test." We agree.
 {¶ 53} With respect to the field sobriety tests, the trial court stated, "I can exclude his field sobriety test because he did not really explain them very well in what he was doing. *Page 16 
 {¶ 54} "However, the officer's testimony can still come in as a lay witness. His perception as a lay witness as to the intox — if he was intoxicated. The things of that nature. Well, with — that will then allow him to then still go forward to send the defendant to the officer for testing for the breathalyzer. So it stays here.
 {¶ 55} "I see no reason to treat an officer's testimony regarding the defendant's performance on a non-scientific field sobriety test any different from his testimony, addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, or odor of alcohol.
 {¶ 56} "In all these cases are officers testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving intoxicated.
 {¶ 57} "So, just from the officer's testimony, my decision was to not include his — the field sobriety test will be suppressed. However, I will allow his lay testimony as a witness in regarding the smell of the alcohol and the conversation, things of that nature."
 {¶ 58} After reviewing the transcript, it is clear that the trial court properly acknowledged that an officer's lay testimony "regarding the smell of the alcohol and the conversation, things of that nature" could be admitted. But the trial court also excluded the officer's testimony concerning his observations of Hunter *Page 17 
during the performance of the field sobriety tests. We find that the trial court erred by doing so.
 {¶ 59} In State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, the Ohio Supreme Court held that in addition to normal observations such as erratic driving, slurred speech, smell of alcohol, and glassy eyes, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." Id. at the syllabus. The Supreme Court explained:
 {¶ 60} "The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which a defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated.
 {¶ 61} "Unlike the actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's *Page 18 
conduct and appearance. Such testimony is being offered to assist the jury in determining a fact in issue, i.e., whether a defendant was driving while intoxicated. Moreover, defense counsel will have the opportunity to cross-examine the officer to point out any inaccuracies and weaknesses. We conclude that an officer's observations in these circumstances are permissible lay testimony under Evid. R. 701." Id. at _14-15.
 {¶ 62} Under the law as it now stands, the results of the field sobriety test must be shown to be in substantial compliance with NHTSA standards, or other accepted testing criteria. The police officer's observations during those tests, on the other hand, are not required to meet any such standard and are admissible merely because they are relevant to whether the defendant is intoxicated. It would be relevant if the defendant could not hold himself steady, stumbled when he walked, or fell down when he tried to stand on one foot. These are the type of facts an officer might observe during field sobriety tests. Using the standards set forth in Schmitt, there is no reason to suppress Officer Moore's testimony regarding what he observed during the field sobriety tests even if the final results of those tests are suppressed.
 {¶ 63} Accordingly, we find that the trial court erred when it suppressed all of Officer Moore's testimony regarding his observations of Hunter during his performance of field sobriety tests. In addition to testifying that Hunter could *Page 19 
not follow "the simplest instructions of going to the right or to the left," that Hunter "smelled of alcohol," and that Hunter tried three times to recite the alphabet but could not get past "T," Officer Moore also testified that Hunter could not keep his foot lifted for even "a few seconds," and that during the walk-and-turn test, Hunter "stepped off the line several times, used his arms for balance, lost his balance, and staggered."
 {¶ 64} It is our view that if the trial court would have permitted this testimony, then it may have been sufficient evidence, along with the other testimony, to establish probable cause to arrest under the "totality of the circumstances." See Gates Mills, supra ("`the totality of facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded ***.' State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-212").
 {¶ 65} The City's third assignment of error is sustained.
 {¶ 66} The judgment of the Cleveland Municipal Court is affirmed in part, reversed in part, and remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal. *Page 20 
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Officer Moore thoroughly and competently testified — at length — regarding each field sobriety test. He explained each instruction that he gave to Hunter in depth, and showed the trial court how he demonstrated the tests to Hunter. He then described in detail how Hunter performed each test.
[2] Ohio Adm. Code 3701-53-01(B) was amended on January 8, 2009. The second part of this provision, relating to the manual for the breath-testing instrument, was removed. The first part, relating to the written procedural manual for the analytical testing of blood, urine, or other bodily substance, remains. The language referring to "other bodily substances" has been interpreted to allow the testing of either whole blood or blood serum in substantial compliance with the regulations.State v. Gordon, 8th Dist. No. 80079, 2002-Ohio-2140, _9. Thus, the manual for the breath machine is no longer required to be in the area where the breath tests are performed. *Page 1