[Cite as *S. Euclid v. Bautista-Avila*, 2015-Ohio-3236.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102353**

# CITY OF SOUTH EUCLID

PLAINTIFF-APPELLANT

vs.

# FRANCISCO BAUTISTA-AVILA

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
South Euclid Municipal Court
Case No. TRC 1302336

**BEFORE:** Laster Mays, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 13, 2015

**ATTORNEY FOR APPELLANT**

Brian M. Fallon
P.O. Box 26267
Fairview Park, Ohio 44126


**ATTORNEYS FOR APPELLEE**

Richard L. Fenbert
S. Michael Lear
Brian A. Murray
Larry W. Zukerman
Zukerman, Daiker & Lear Co., L.P.A.
3912 Prospect Avenue
Cleveland, Ohio 44115

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant, city of South Euclid ("South Euclid"), appeals a decision from the South Euclid Municipal Court that granted a motion to suppress standardized field sobriety tests ("SFSTs") results and ruled that the totality of the circumstances failed to support probable cause to arrest the appellee, Francisco Bautista-Avila ("Bautista").[1]

{¶2} South Euclid presents two assignments of error. They first argue that the trial court erred in finding that the SFSTs results were inadmissible. South Euclid further argues that the trial court erred in finding that there was no probable cause for the arrest of Bautista.

{¶3} After a thorough review of the trial court record, we affirm.

**Standard of Review**

{¶4} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). An appellate court reviewing a motion to suppress is bound to

---

[1]Bautista was also arrested for failure to have a valid driver's license under the South Euclid Codified Ordinance 335.071. That charge is still pending in the South Euclid Municipal Court.

accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993). Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *Cleveland v. Hunter*, 8th Dist. Cuyahoga No. 91110, 2009-Ohio-1239, ¶ 23-25, citing *Burnside* at 158.

## I.     Facts and Procedural Posture

{¶5} On August 24, 2013, Bautista's vehicle was randomly stopped by the South Euclid Police Department at a sobriety checkpoint. When Officer Robert Baldyga ("Baldyga") approached the vehicle, he noticed a moderate odor of alcohol coming from the vehicle. After observing several open beer bottles in the back seat of the vehicle, Baldyga asked Bautista if he had been drinking alcohol, to which Bautista replied that he had. Baldyga then asked Bautista to exit the vehicle so SFSTs could be administered on him.

{¶6} Three SFSTs were administered:  the horizontal gaze nystagmus test ("HGN"), the walk-and-turn test ("WAT"), and the one-leg stand test ("OLS"). Each was administered by Baldyga, who was the contact officer at the checkpoint. After the administration of the SFSTs, Baldyga placed Bautista under arrest and charged him with operating a motor vehicle while under the influence in violation of South Euclid Codified Ordinance 333.01(A)(1)(a).

{¶7} Bautista filed a motion to suppress the evidence arguing that the SFSTs were not administered in substantial compliance with the guidelines established by the National

Highway Traffic Safety Administration ("NHTSA"), and that Baldyga lacked probable cause to arrest him.

{¶8} At the conclusion of the suppression hearing, the trial court agreed with Bautista and determined that Baldyga did not follow the proper procedures when administering the SFSTs in accordance with the NHTSA, and that he did not have sufficient probable cause to arrest Bautista. South Euclid filed a timely appeal.

## II. Law and Analysis

### A. Sobriety Field Tests

{¶9} In accordance with R.C. 4511.19(D)(4)(b), an officer may testify "concerning the results of the field sobriety test" if he substantially complies with the testing standards. In seeking to suppress the results of a breath analysis or field sobriety test, the defendant must set forth an adequate basis for the motion. *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994). The motion must state the "legal and factual bases with sufficient particularity to place the prosecutor and court on notice as to the issues contested." *Id*. Once an adequate basis for the motion has been established, the prosecutor then bears the burden of proof to demonstrate substantial compliance with the Ohio Department of Health ("ODH") regulations. *Xenia v. Wallace*, 37 Ohio St.3d 216, 220, 524 N.E.2d 889 (1988). If the prosecutor demonstrates substantial compliance, the burden of proof then shifts to the defendant to overcome the presumption of admissibility and demonstrate that he was prejudiced by anything less than strict compliance. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71 at ¶ 24; *Hunter*, 8th Dist.

Cuyahoga No. 91110, 2009-Ohio-1239, at ¶ 23-25.

{¶10} Baldyga testified at the motion hearing that he performed three SFSTs on Bautista including, the HGN, the WAT, and the OLS tests. All of the tests were videotaped by Sergeant Abel of the South Euclid Police Department and were shown to the trial court during this hearing.

### i. Horizontal Gaze Nystagmus Test

{¶11} According to the NHTSA Standardized Field Sobriety Testing Appendix A online manual, when testing the HGN, the officer should look for three indicators, "(1) if the eye cannot follow a moving object smoothly, (2) if jerking is distinct when the eye is at maximum deviation, and (3) if the angle of onset of jerking is within 45 degrees of center." National Highway Traffic Safety Administration, Standardized Field Sobriety Testing, http://www.nhtsa.gov/ people/injury/alcohol/SFST/appendix_a.htm (accessed June 22, 2015). Additionally, the manual also gives officers detailed instructions on how to test for each of the three indicators. For the first indicator, the NHTSA DWI Detection and Standardized Field Sobriety Testing Manual instructs officers to hold a stimulus 12-15 inches from the nose of the subject slightly above eye level and check that the size of the pupils is equal and not jerking back and forth. Then the officer should ask the subject to follow the stimulus from left to right with their eyes only, keeping their head still. For the second indicator, the officer should instruct the subject to hold each eye at the maximum deviation for a minimum of four seconds, and check that each eye can hold without jerking. For the third and final indicator, the officer shall instruct the

subject to move their eyes slowly from the center to a 45-degree angle without significant jerking. National Highway Traffic Safety Administration, DWI Detection and Standardized Field Sobriety Testing Student Manuel, Section I, at X-2 (Aug. Ed. 2006).

{¶12} During the hearing, Baldyga testified about the procedures that he used to determine whether Bautista was under the influence of alcohol. First he testified about the steps he took to conduct the HGN test on Bautista. Several procedures were incorrectly stated and also incorrectly performed. Baldyga testified that he used his flashlight as the stimulus and held it 12-15 inches away from Bautista at eye level. He was supposed to hold the flashlight above the eye.

{¶13} Baldyga's administration of the SFSTs was videotaped for the trial court to observe. The video evidence was not consistent with Baldyga's testimony. The video first showed Baldyga flashing a pen light into Bautista's eyes. He then instructs Bautista to keep his head still and follow the pen light with his eyes only, not moving his head. Bautista then shines the flashlight left and right a few times and then up and down. After which, he concludes the HGN test. He never asks Bautista to move his eyes from the center of his nose to maximum deviation. He also does not check if Bautista can hold his eyes at the maximum deviation for a minimum of four seconds.

{¶14} Next Baldyga testified that when he administered the HGN on Bautista, he was looking for three parts: the horizontal nystagmus, resting nystagmus, and the vestibular nystagmus. These are not the three parts stated in the manual. Baldyga then testified that after looking for these three parts, he checked the sustained maximum

deviation that takes place "when you no longer see the white in the corner of his eye." The attorney for Bautista asked Baldyga several times what he was looking for on the HGN. Each time Baldyga answered that he was looking for nystagmus, but he could not define what is nystagmus. Baldyga was unaware of how to determine nystagmus or the other clues he was supposed to look for. According to the NHTSA, he was supposed to look for lack of smooth pursuit in each eye. When asked repeatedly about indicators he was supposed to look for, he never testified about looking for lack of smooth pursuit. For the third clue, Baldyga did not testify that he had Bautista move his eyes slowly from the center to a 45-degree angle. This was consistent with the video. In the video, Baldyga never checked for sustained maximum deviation. He also testified that he did not recall when he first saw a nystagmus in Bautista's eyes. Given Baldyga's testimony and the video evidence, the trial court concluded that he did not substantially comply with the testing standards set forth by the NHTSA.

### ii. Walk-and-Turn Test

{¶15} According to the NHTSA manual, "in the Walk-and-Turn test, the subject is directed to take nine steps, heel-to-toe, along a straight line. After taking the steps, the suspect must turn on one foot and return in the same manner in the opposite direction." National Highway Traffic Safety Administration, Standardized Field Sobriety Testing, http://www.nhtsa.gov/ people/injury/alcohol/SFST/appendiz_a.htm (accessed June 22, 2015). While the suspect is performing the test, the officer or examiner is looking for eight indicators of impairment. These indicators are, "if the suspect cannot keep balance

while listening to the instructions, begins before the instructions are finished, stops while walking to regain balance, does not touch heel-to-toe, steps off the line, uses arms to balance, makes an improper turn, or takes an incorrect number of steps." *Id.* In his testimony, Baldyga stated that there were six clues that he looked for the night Bautista performed this test. He named only three. When asked about this discrepancy, he testified that there were three clues to look for while the suspect walked down the line, "and then three clues on the way back." When asked for clarification, he stated, "there's a total of three on his approach towards his turn and I'm then looking for the same three on his return." Baldyga testified that the three clues he was looking for were "if he raises his arms, doesn't touch heel to toe, and if he steps off the line." He did not mention the other five indicators, and only two of the three indicators he stated during his testimony were correct. The trial court concluded that Baldyga did not substantially comply with the testing standards outlined by the NHTSA manual.

### iii.    One-Leg Stand Test

{¶16} Baldyga then asked Bautista to perform the OLS test. According to the NHTSA manual, there are four indicators of impairment. These include, "swaying while balancing, using arms to balance, hopping to maintain balance, and putting the foot down." *Id.* During his testimony, Baldyga acknowledged that there were four indicators of impairment. However he wrote down and testified that one of the indicators that Bautista was under the influence of alcohol was that Bautista kept looking at his toe. When asked if that was an official indicator, Baldyga responded that it was not one of the

NHTSA clues, but his own indicator. According to his testimony, he never told Bautista that he could not look at his toe or to stop looking at his toe. Baldyga created his own standards and indicators of impairment that are not in line with the official indicators. The trial court concluded that Baldyga did not substantially comply with the testing standards created by the NHTSA.

## B.    Probable Cause to Arrest

{¶17} South Euclid asserts in its second assignment of error that the trial court erred in finding that there was no probable cause for the arrest of Bautista. An officer may arrest a suspect without a warrant when he has probable cause to believe that the suspect was operating a motor vehicle under the influence of alcohol. *State v. Henderson*, 51 Ohio St.3d 54, 554 N.E.2d 104 (1990). "Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense." *State v. Otte*, 74 Ohio St.3d 555, 559, 660 N.E.2d 711 (1996). "Probable cause 'has come to mean more than bare suspicion,' but 'less than evidence which would justify condemnation' or conviction." *United States v. Thomas*, 11 F.3d 620, 627 (6th Dist.1993), quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

{¶18}    "[E]ach 'drunken driving' case is to be decided on its own particular and peculiar facts." (Emphasis omitted.) *Mentor v. Giordano*, 9 Ohio St.2d 140, 146, 224 N.E.2d 343 (1967). The court is to examine all the facts and circumstances when

deciding the issue of probable cause to support a warrantless arrest for drunk driving. *State v. Tate*, 40 Ohio App.3d 186, 187, 532 N.E.2d 167 (11th Dist.1987). When an officer uses the results of SFSTs to serve as evidence of probable cause to arrest, the officer is responsible for substantially complying with the standardized testing procedures. "[E]ven minor deviations from the standardized procedures can bias the test results." Quoting from an NHTSA manual, we stress that "if any one of the standardized field sobriety test elements is changed, the validity is compromised." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 7, quoting *State v. Homan*, 89 Ohio St.3d 421, 425, 732 N.E.2d 952 (2000).

{¶19} Bautista was arrested for operating a vehicle while under the influence of alcohol. Baldyga determined from the results of the SFSTs that Bautista had consumed alcohol beyond the legal limit for operating a vehicle. However these results were unreliable because Baldyga did not administer the SFSTs with substantial compliance. On each of the three tests that Baldyga administered, he was mistaken about what indicators of impairment he was testing for, changed the indicators of impairment to include his own, and did not give correct instructions to Bautista. Therefore, SFSTs cannot be used as evidence of probable cause to arrest.

{¶20} Nevertheless, when the SFSTs results are considered to be unreliable, "an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." *Schmitt* at ¶ 82. Baldyga testified that Bautista was stopped and pulled over as he was driving his vehicle during a routine

sobriety checkpoint. Bautista was not observed driving erratically, but when Baldyga approached Bautista's vehicle, he testified that he smelled a moderate odor of alcohol coming from Bautista and saw open bottles in the back seat. Baldyga asked Bautista to step out of his vehicle so he could initiate SFSTs. Baldyga stated Bautista "stumbled as he exited the vehicle." This interaction was not on the videotape. From this point until the end of the SFSTs, Baldyga's administration of the SFSTs was videotaped for the trial court to observe. After watching the video of the SFSTs, the trial court noted that "the defendant's conduct and appearance shown on the videotape do not include any loss of balance or other characteristics common to an impaired individual." *S. Euclid v. Bautista*, Garfield M.C. No. TRC 1302336 (Dec. 5, 2014). The trial judge "is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Even without the videotape, Baldyga's testimony did not give credence to the trial court that there was probable cause to arrest Bautista.

## C. Conclusion

{¶21} Baldyga did not substantially comply with the testing standards set forth by the NHTSA, nor did he have probable cause to arrest Bautista for operating a motor vehicle while under the influence of alcohol. Bautista did not display any signs that he was impaired by alcohol, he complied with the SFSTs incorrectly administered by

Baldyga, and he was not observed driving erratically. His speech was not slurred, he did not fall to the ground, nor did he sway or stumble. Baldyga's testimony was inconsistent with the video evidence, and his testimony contained a number of contradictions and incorrect procedures. South Euclid argues that because Bautista admitted that he was in the United States illegally, Baldyga had probable cause to arrest him. Baldyga did not arrest Bautista for illegal immigration. Bautista was not charged with being in the country illegally. This argument is off the mark and has no merit. He was arrested and charged with operating a motor vehicle under the influence. It has not been shown, proven that Bautista was under the influence when he was arrested and charged.

{¶22} This court is acutely aware of the peril that impaired driving poses to the community. We regularly affirm properly prosecuted cases of OVI. Our function, post trial, is to review the appealed decision, to ensure that due process was properly applied. We will not, we do not, we cannot be compliant in the faulty prosecution of a case that results from improper, prejudicial gathering of evidence.

{¶23} Therefore the appellant's assignments of error are overruled.

{¶24} We affirm the decision of the South Euclid Municipal Court.

It is, therefore, ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the South Euclid Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

TIM McCORMACK, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR